UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PRIMERA MARITIME (HELLAS) LTD.,                :       08 CV

                Plaintiff,                                        :

     - against -                                         :

INDUSTRIAL CARRIERS INC. a/k/a ICI,        :
WEAVER INVESTMENTS INC, SELENE          :
SHIPMANAGEMENT SA, AUSTER MARINE   :
CO. and DIAMANT CO. LTD.,                           :

                Defendants.                                  :
------------------------------------------------------------X



(RECEIVED OCT - 9 2008 U.S.D.C. S.D.N.Y. CASHIERS)

## **VERIFIED COMPLAINT**

Plaintiff, PRIMERA MARITIME (HELLAS) LTD. (hereinafter referred to as "Primera" or "Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendant, INDUSTRIAL CARRIERS INC. also known as "ICI" (hereinafter "ICI"), WEAVER INVESTMENTS LTD. (hereinafter "Weaver"), SELENE SHIPMANAGEMENT SA (hereinafter "Selene"), AUSTER MARINE CO. (hereinafter "AUSTER") and DIAMANT & CO. LTD. (hereinafter "Diamant") (all collectively referred to as "Defendants"), alleges, upon information and belief, as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333.

2. At all times material to this action, Plaintiff was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of the laws of Liberia, with a principal place of business in Athens, Greece.

3.      Upon information and belief, and at all times material to this action, Defendant ICI was, and still is, a foreign corporation, or other business entity, organized under, and existing by Marshall Islands law.

4.      Upon information and belief, Defendant WEAVER was, and still is, a foreign corporation, or other business entity organized and existing under foreign law, and was, and still is, a trade name, alias, alter-ego, paying agent, receiving agent, and/or joint venturer of ICI who is now, or will soon be, holding assets belonging to ICI.

5.      Upon information and belief, Defendant SELENE was, and still is, a foreign corporation, or other business entity organized and existing under foreign law, and was, and still is, a trade name, alias, alter-ego, paying agent, receiving agent, and/or joint venturer of ICI who is now, or will soon be, holding assets belonging to ICI.

6.      Upon information and belief, Defendant AUSTER was, and still is, a foreign corporation, or other business entity organized and existing under foreign law, and was, and still is, a trade name, alias, alter-ego, paying agent, receiving agent, and/or joint venturer of ICI who is now, or will soon be, holding assets belonging to ICI.

7.      Upon information and belief, Defendant DIAMANT was, and still is, a foreign corporation, or other business entity organized and existing under foreign law, and was, and still is, a trade name, alias, alter-ego, paying agent, receiving agent, and/or joint venturer of ICI who is now, or will soon be, holding assets belonging to ICI.

8.      Plaintiff and Defendant entered into the Forward Freight Agreement[1] dated July 2, 2008, respectively as Seller and Buyer (hereinafter the "FFA"). *A copy of the FFA is annexed hereto as Exhibit 1.*

---

[1] A "forward freight agreement" or "FFA" is a form of cash settled fixed-floating swap contract on freight rates traded on Baltic exchange, through which shippers and ship owners hedge against the volatility of the ocean freight

9. The FFA provided for a contract rate (what is referred to as "fixed rate" in footnote 1) of $70,000.00 per day, for a period of 92 days, commencing in July 2008 and expiring in September 2008. The agreed settlement rate (what we referred to as "floating rate" in footnote 1) was the average of the prices for the relevant routes and type of vessel as published by the Baltic Exchange. *See Exhibit 1, page 2.*

10. Pursuant to the terms of the FFA, the settlement dates are the last Baltic Exchange[2] Index publication day of each contract month. *See Exhibit 1.*

11. The FFA provides that the settlement rate shall be the average of the rates for the Contract Route(s) published by the Baltic Exchange over the Settlement Period defined as all the Baltic Exchange Index publication days of the Contract Month up to and including each settlement date. Payment of the settlement sum is due on the later of two London business days after presentation of payee's invoice or five London business days after the Settlement Date. *See Exhibit 1.*

12. Pursuant to the Clause 17 of the FFA, the applicable beneficiary of payments made to the buyer is Weaver Investments Inc. *See Exhibit 1.*

---

market. Under a cash settled fixed-floating swap generally one party (the "Seller") pays the floating price – namely the floating rate times and the notional quantity – and the other party (the "Buyer") pays the fixed price – namely the fixed rate times the notional quantity At settlement instead of exchanging payments for the entire amounts one party the swap pays the other party the difference between the floating rate and the fixed rate times the notional quantity. If such difference yields a positive number then the Seller will have to pay the Buyer the corresponding amount. If the difference yields a negative number then the Buyer will owe the Seller the corresponding amount. In the case of the specific swap contract entered into by Plaintiff and Defendants the floating price is determined by reference to rates for the relevant routes as published by the Baltic Exchange over the term of the swap namely July, August and September 2008. Each such month being a separate settlement period under the swap which has therefore three settlement dates on which payments are to be made,

[2] The "Baltic Exchange" – full name "Baltic International Freight Futures Exchange" http://www.balticexchange.com – is the world's premier ocean freight market for mostly dry bulk cargo (such as coal, grains, and iron ore) where ship owners and cargo owners are matched by the exchange's members called ship brokers. Situated in London, it is also the market for buying and selling ships (accounting for about half the world's new and second-hand tonnage). The Baltic Exchange publishes forward prices based on the average of assessments by a panel of brokers of actual charter party contracts entered into by market participants. Such forward prices constitute the benchmark for FFAs.

13. The FFA sets forth that the Settlement Dates are the "last Baltic Exchange Index publication day of each Contract Month". So for September the Settlement Date was September 30, 2008.

14. On or about October 1, 2008, Plaintiff presented an invoice to Defendant seeking payment of the September Settlement Sum in the amount of $904,898.52. Pursuant to the terms of the FFA, payment was to be received in full no later than October 6, 2008 (5 business days after the applicable Settlement Date, September 30, 2008). *A copy of Plaintiff's invoice is attached hereto as Exhibit 2.*

15. Despite due demand for payment, Defendant has failed and/or refused to remit payment to Plaintiff, in breach of the FFA.

16. As a result of Defendant's breach of the FFA contract, Plaintiff has suffered losses in the total principal sum of $904,898.52, as best as can now be estimated, exclusive of interest, recoverable costs and attorney's fees.

17. Pursuant to the Clause 16 of the FFA, disputes between the parties are to be submitted to the English High Court of Justice with English law to apply.

18. Plaintiff is currently preparing to commence litigation against the Defendant in the English High Court on its claims described herein.

19. Forward Freight Agreements constitute maritime contracts. *See Brave Bulk Transport Ltd. v. Spot On Shipping Ltd.*, 2007 U.S. Lexis 81137 at **3-7 (S.D.N.Y. October 30, 2007).

20. This action is brought in order to obtain jurisdiction over Defendant and also to obtain security for Plaintiff's claims and in aid of the English High Court of Justice proceedings.

21. Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. As best as can now be estimated, Plaintiff expects to recover the following amounts at the English High Court of Justice as the prevailing party:

| | | |
|---|---|---|
| A. | Principal claim: FFA Settlement Sum: | $904,898.52 |
| B. | Estimated interest on claim - 2 years at 7.5 % compounded quarterly: | $144,984.50; |
| C. | Estimated attorneys' fees and expenses: | $150,000.00 |
| **Total:** | | **$1,199,883.02.** |

22. Upon information and belief, Defendant ICI is the alter-ego of Defendants Weaver, Selene, Auster and Diamant because it dominates and disregards their corporate forms to the extent that ICI is actually carrying on their business and operations as if the same were its own, or vice versa.

23. Upon information and belief, Defendants Weaver, Selene, Auster and Diamant are shell-corporations through which Defendant ICI conducts its business, or vice versa.

24. Upon information and belief, Defendants Weaver, Selene, Auster and Diamant have no separate, independent identity from Defendant ICI.

25. Upon information and belief, ICI uses Weaver, Selene, Auster and Diamant as "paying/receiving agents" or "pass through" entities such that it can insulate itself from creditors relating to its commercial obligations and in particular its vessel charters. *See copies of ICI's Statement of Accounts dated December 19, 2007 (M/V Pioneer Sky) and February 27, 2008 (M/V Four Earth) sent to Dynacoal in which ICI directed Dynacoal to remit freight payments not to ICI but rather to Weaver attached hereto as Exhibit 3. See also copies of wire remittances made*

*by ICI to Plaintiff for Vessel hire (M/V Efessos) via Selene and Auster attached hereto as Exhibit 4.*

26. It is not general practice in the maritime community, nor any where else, for independent companies to make or receive large payments on behalf of other independent companies.

27. Payments sent or received on behalf of another independent company are indicative of a relationship that is not "arms length."

28. Upon information and belief, ICI directs its debtors to makes payments to Weaver, Selene, Auster and/or Diamant where ICI's debtors have absolutely no contractual obligation to Weaver, Selene, Auster and/or Diamant, or vice versa.

29. Upon information and belief, ICI issues invoices to third parties for its services and directs payments to be made to Weaver, Selene, Auster and/or Diamant, although Weaver, Selene, Auster and/or Diamant have no contractual relationship to such third parties.

30. Based on the foregoing, as well as other activities, ICI, Weaver, Selene, Auster and Diamant should be considered as a single economic unit with no corporate distinction between or among them, rendering each liable for the debts of the other, and all assets of Weaver, Selene, Auster and/or Diamant susceptible to attachment and/or restraint for the debts of ICI.

31. By virtue of the foregoing, Weaver, Selene, Auster and Diamant are properly considered a party to the subject contract as the trade name, alias, alter ego, and/or paying/receiving agent of Defendant, ICI.

32. In the further alternative, all Defendants are partners and/or joint venturers.

33. In the further alternative, all Defendants are affiliated companies such that Weaver, Selene, Auster and/or Diamant are now, or will soon be, holding assets belonging to ICI, or vice versa.

34. The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendants. *See Affidavit of Kevin J. Lennon in Support of Prayer for Ex Parte Order attached hereto as Exhibit 5.*

35. Although there is a registration for a foreign corporate entity with the New York Department of State – Division of Corporations' online database for "INDUSTRIAL CARRIERS INC." this does not establish a presence in this District such that this Court should decline to issue the Ex Parte Order authorizing Process of Maritime Attachment and Garnishment sought by Plaintiff.

36. Further, the aforesaid registration lists the jurisdiction of the entity "INDUSTRIAL CARRIERS INC." as Greece whereas the contractually listed entity in the FFA is noted as "Industrial Carriers Inc. Marshall Islands c/o Diamant & Co. Ltd., 1, St., Bazarnaya Street, 65014 Odessa," Ukraine.

37. The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any assets of the Defendants held by any garnishees within the District for the purpose of obtaining personal

jurisdiction over the Defendants and to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Complaint failing which default judgment be entered against it;

B. That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of **$1,199,883.02** belonging to, due or being transferred to, from, or for the benefit of the Defendants, including but not limited to such property as may be held, received or transferred in Defendants' name(s) or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C. That pursuant to 9 U.S.C. §§ 201 et. seq and/or the principles of comity, that this Court recognize and confirm any awards and/or judgment(s) rendered on the claims set forth herein as a Judgment of this Court

D. That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which has or may be initiated in the future, including any appeals thereof;

E.  That in the alternative, this Court enter judgment against Defendants on the claims set forth herein;

F.  That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

G.  That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated:   October 9, 2008

The Plaintiff,
PRIMERA MARITIME (HELLAS) LTD.

By: /s/ *signature*
Patrick F. Lennon
Kevin J. Lennon
Nancy R. Siegel
LENNON, MURPHY & LENNON, LLC
420 Lexington Avenue, Suite 300
New York, NY 10170
(212) 490-6050 - phone
(212) 490-6070 – facsimile
pfl@lenmur.com
kjl@lenmur.com
nrs@lenmur.com

# ATTORNEY'S VERIFICATION

State of New York    )
                     )    ss: City of New York
County of New York   )

1. My name is Kevin J. Lennon.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an attorney in the firm of Lennon, Murphy & Lennon, LLC attorneys for the Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated:    October 9, 2008

_____
Kevin J. Lennon